UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARC A. WHITAKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:05-cv-1597-JDT-WTL |
| | ) | |
| | ) | |
| HUDSON & KEYSE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry on Cross-Motions for Summary Judgment (Doc. Nos. 35, 45)**[1]

In this action, the Plaintiff, Marc A. Whitaker ("Whitaker"), alleges that the

Defendant, Hudson & Keyse, LLC ("Hudson"), violated the Fair Debt Collection

Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e, 1692g, when Hudson sent him a dunning

letter seeking to collect a debt it obtained from Whitaker's creditor.  Hudson has filed a

motion for summary judgment, to which Whitaker has responded and, in turn, filed his

own cross-motion for partial summary judgment.

**I.      Background**

Sometime before December 30, 2003, Whitaker opened a credit card account

with Circuit City.  This account was initially administered by First North American

National Bank ("First North").

---

[1]  This Entry is a matter of public record and will be made available on the court's web
site.  However, the discussion contained herein is not sufficiently novel to justify commercial
publication.

On November 21, 2003, First North sent Whitaker a letter informing him that it believed his Circuit City account was seriously delinquent, with an existing balance of $3,558.96.  The letter from First North further stated that Whitaker's account was being closed and forwarded to First North's collection department for immediate collection. Under a section entitled "Balance Summary," Whitaker could see the finance charges he had incurred during the last billing cycle, and that all finance charges were subject to a fixed interest rate.

Following this letter, on December 16, 2003, Whitaker received his first dunning letter from Central Credit Services, Inc. ("Central Credit"), indicating that he owed a balance of $4,726.89.  Because of the discrepancy between the amount due stated in this letter versus that stated in the previous letter from First North, Whitaker contacted Central Credit, both verbally and through the mail, in order to dispute, and seek validation of, the charge.

Eventually, on March 12, 2004, Whitaker set up a repayment plan with Central Credit, through which Central Credit would make monthly deposits of post-dated checks given to it by Whitaker.  Through July 21, 2004, Central Credit deposited a total amount of $1,200.00 from Whitaker.  On September 10, 2004, Whitaker sent Central Credit a letter asking Central Credit to cease depositing his checks.  After some delay, and the resolution of several issues that need not be considered here, Mr. Whitaker and Central Credit ended their relationship.

2

On November 4, 2004, Bank One[2] sent Whitaker a letter stating that, upon reviewing his account, it had determined that the balance due on that account had been improperly stated, and thus was being reduced from $3,326.89 to $2,236.07.  Following that letter, on January 5, 2005, Whitaker received a dunning letter from American Coradius, Inc. ("American Coradius"), stating that it was seeking collection of his balance of $2,436.07.  Whitaker promptly sent a return letter informing American Coradius that the stated debt was in dispute and demanding that American Coradius "cease and dismiss" its collection efforts.  Contrary to Whitaker's demands, American Coradius sent him another dunning letter on May 24, 2005, still stating that $2,436.07 was due.

Finally, on June 10, 2005, Whitaker received a dunning letter from a third debt collector, Defendant Hudson.  This letter stated that Whitaker had a past-due balance of $4,802.37, an amount in excess of the balance stated by Bank One, by a figure of $2,566.30.  However, Whitaker did not, either verbally or in writing, make contact with Hudson in regard to the amount stated in the dunning letter until September 26, 2005.  While the amount stated was clearly more than the amount stated by Bank One to Whitaker, it is the exact amount of which Bank One informed Hudson.[3]

---

[2]  At some point during the course of these events, Bank One merged with J.P. Morgan Chase.  Plaintiff refers to interactions with Bank One, while Defendant refers to an agreement with Chase Bank.  For purposes of this Entry, both of these entities will be referred to as "Bank One."

[3]  Neither Whitaker nor Hudson has presented any evidence that, prior to this lawsuit, the other was aware of these individual communications with Bank One.  Further, Whitaker has not stated that Hudson was aware of his dealings with earlier collectors.

On March 23, 2005, Bank One and Hudson had entered into a "Credit Card Account Purchase Agreement," through which Hudson acquired Whitaker's Circuit City account.  The agreement listed Whitaker as having a balance of $3,536.89 as of his account's charge-off date, which was December 8, 2003.  Taking this amount, and computing the subsequent interest accruals, Hudson avers that it determined that as of June 10, 2005, the date Hudson sent its dunning letter to Whitaker, the balance due on the account was $4,802.37, the exact amount stated as due in the dunning letter.[4]

Following this entire series of events, Whitaker filed his initial complaint on October 21, 2005, naming Central Credit, American Coradius, and Hudson as defendants.  Since that time, both Central Credit and American Coradius have been dismissed from the case, leaving Hudson as the lone defendant.

## II.     Discussion

Plaintiff Whitaker alleges that Defendant Hudson violated the FDCPA by failing to give him proper notice of the debt it was seeking to collect, in violation of 15 U.S.C. § 1692g.  Whitaker further asserts that the amount of debt stated to be due in the dunning letter was a "false representation" of "the character, amount, or legal status of [his] debt," in violation of 15 U.S.C. § 1692e(1)-(2)(A).

---

[4]  Whitaker does not dispute the information contained in the exchanges between Bank One and Hudson; however, Whitaker does dispute Hudson's method of interest calculation, albeit in an improper manner.  *See* n.12, *infra.*

Hudson denies these allegations and pleads that, even if true, the plaintiff should still not prevail, as Hudson's actions fall within the confines of the "bona fide error" defense of 15 U.S.C. § 1692k(c).  In order to successfully establish this defense, a defendant-debt collector must show "by a preponderance of evidence" that any violation of the FDCPA was "not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k(c).  Hudson has moved for summary judgment on its denial of the charges and its further reliance on the bona fide error defense, and Whitaker has filed a corresponding cross-motion for partial summary judgment.

Summary judgment is appropriate when the "pleadings . . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When deciding cross-motions for summary judgment, the court construes the facts and inferences therefrom "in favor of the party against whom the motion under consideration is made."  *In re United Air Lines, Inc.*, 453 F.3d 463, 468 (7th Cir. 2006).

In this case, it is not disputed that Hudson sent the June 10, 2005, dunning letter to Whitaker as the holder of the Circuit City account; nor are the facts supporting the conclusion that Whitaker is a debtor and Hudson is a debt collector and that, therefore, the FDCPA applies to the facts of this case.  *See* 15 U.S.C. §§ 1692a(3), (6).  Further, Hudson does not dispute the letter from Bank One to Whitaker, and Whitaker does not dispute the agreement between Bank One and Hudson.  With this in mind, there are no

5

disputed facts precluding this court from deciding the issues presented in these motions as a matter of law.

As a preliminary matter, Whitaker appears to address a claim that Hudson's dunning letter violated 15 U.S.C. § 1692g, as it allegedly failed to properly state the amount of debt owed.  However, this charge would be misplaced, as the charge is contradictory.  Whitaker's main claim is that Hudson is in violation of the FDCPA for misrepresenting the amount of his debt; establishing this claim would prove a daunting task indeed if Hudson had violated § 1692g by failing to state an amount of debt. Whether Hudson misrepresented the amount owed by Whitaker is a separate question, one deserving a far greater deal of attention.

Under the FDCPA, a debt has been misrepresented when the debt collector makes "any false, deceptive, or misleading representation" of "the character, amount, or legal status of any debt."  15 U.S.C. § 1692e.  In order to constitute a misrepresentation of the debt, an amount misstated by the debt collector "need not be deliberate, reckless, or even negligent to trigger liability–it need only be false."  *Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 495 (7th Cir. 2007).  Essentially, "the FDCPA uses a strict-liability approach."  *Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004).  Because of this strict standard, the debt collector, after being found in violation of the FDCPA, may avail itself of the bona fide error defense of 15 U.S.C. § 1692k(c).

6

In the June 10, 2005, dunning letter, Hudson clearly expressed that the amount of the debt was $4,802.37, an amount in excess of what was actually due[5].  However, Hudson claims that it is not in violation of the FDCPA because Whitaker failed to notify[6] Hudson within thirty (30) days of receiving the letter that he disputed the debt or any portion thereof, and the amount stated in the letter is the interest-adjusted balance owed based on the appropriate interest rate, starting with the balance Bank One had listed as due on the charge-off date.  For this contention, Hudson relies on the language of 15 U.S.C. § 1692g(a)(3), which states that if the debtor does not dispute the information in the dunning letter within thirty (30) days of receiving it, "the debt will be assumed to be valid by the debt collector."

Hudson's argument fails because this provision states that the debt collector may *assume* that the debt is valid; but, according to 15 U.S.C. § 1692g(c)[7], this does not actually make the debt valid.  A debtor's failure to dispute the charges in a dunning letter merely allows the debt collector to continue pursuing collection of a *properly-*

---

[5]  The balance due stated in Hudson's June 10, 2005, dunning letter was a $2,566.30 (114.77%) increase over the amount previously stated as due in the November 4, 2004, letter from Bank One to Whitaker.  *See also* p.3, *supra*.

[6]  Why Whitaker failed to send a dispute letter is still somewhat of a mystery.  While he claims that he was "very confused" by the amount in the dunning letter, he also claims that he "knew" it was wrong.  And, even after saying he knew the debt was wrong, he still reasons that even if he "did have some type of 'responsibility' for correcting Defendant's misstatement of the amount and character of the debt, he was still completely lacking in information necessary to determine the *legitimacy* of the alleged debt."  (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 12 (emphasis added).)

[7]  Admission of liability: "The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer."

*stated* debt without fear of violating the FDCPA.  Here, there is no issue of whether Hudson failed to cease and desist contacting Whitaker after receiving notice that the debt was disputed.  The more pressing question in this case, rather, is whether the debt was improperly stated.

Upon seeing Hudson's dunning letter, Whitaker was purportedly "very confused," as the sum of $4,802.37 was vastly greater than the sum Bank One had told him he owed just months earlier.  He claims that this problem was further exasperated as there was only one amount listed, with no breakdown between the past-due principal and the accrued interest.  In support of this contention, Whitaker cites *Fields v. Wilbur Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004), as stating that "[o]ne simple way to comply with § 1692e . . . would be to itemize the various charges that comprise the total amount of the debt."  To Whitaker, this means that Hudson must have listed the initial balance separately from the interest.  However, the *Fields* court was discussing itemizing attorney's fees, not the amount of interest added.  *Id.* at 565-566.  Moreover, it has also been held that "[t]he unpaid principal balance is not the debt; it is only a part of the debt; the [FDCPA] requires statement of the debt."  *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, LLC*, 214 F.3d 872, 875 (7th Cir. 2000).

The *Miller* court suggested that the collector should have "state[d] the total amount due–interest and other charges as well as principal–on the date the dunning letter was sent."  *Id.*  This is exactly what Hudson did.  The *Miller* court made no mention of any interest-itemization requirements.  The only clear-cut requirement that has been issued by the Seventh Circuit is that the dunning letter not confuse the

8

"unsophisticated" consumer, the type of person "whose reasonable perceptions [should] be used to determine if collection messages are deceptive or misleading." *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994).

While whether Whitaker should have realized any increase in the balance due was the result of the interest on his previous balance is up for debate, the dispositive fact, in terms of 15 U.S.C. § 1692e, is there is no getting around that the debt was misstated. Because of the strict-liability standard which is applied under the FDCPA, there is little to no wiggle room for a defendant within the confines of § 1692e, as even a quite sophisticated consumer would likely have trouble discerning how a completely inaccurate balance figure was formulated. So, the Plaintiff should have, at least, a partial summary judgment in his favor because the amount in the Hudson dunning letter was misstated, thus showing a § 1692e violation. However, Hudson may have a light at the end of the tunnel, as it can seek refuge in the bona fide error defense of 15 U.S.C. § 1692k(c).

In order to utilize the bona fide error defense, the collector must show that its violation of the FDCPA was (1) unintentional, (2) resulted from a bona fide error, and (3) that the collector had maintained reasonable procedures to avoid any violation of the Act. *Kort v. Diversified Collection Servs.*, 394 F.3d 530, 537 (7th Cir. 2005); *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 996 (7th Cir. 2003); *Jenkins v. Heintz*, 124 F.3d 824, 834 (7th Cir. 1997) (all citing 15 U.S.C. § 1692k(c)).

When assessing whether the collector's violation was intentional, the "collector need only show that its FDCPA violation was unintentional, not that its actions were unintentional." *Kort*, 394 F.3d at 537 (citing *Nielsen v. Dickerson*, 307 F.3d 623, 641 (7th Cir. 2002)). Whitaker has not presented any evidence, or even claimed[8], that Hudson's violation of the Act was intentional; the only evidence on this subject was that Hudson was relying on the information given to it by Bank One when it purchased Whitaker's credit card account.

An error is said to be "bona fide" when it is "made in good faith," or is a "genuine mistake, as opposed to a contrived mistake." *Id.* at 538 (citing Black's Law Dictionary 168 (7th ed. 1999)). Again, Hudson's mistake was the result of a good-faith reliance on the balance that was due according to the records given to it by Bank One upon the signing of their credit-account purchase agreement. If informed of a mistake, any error made would have been swiftly rectified by Hudson, in accordance with its procedures for dealing with such situations. (*See, e.g.*, Shropshire Aff. ¶¶ 16, 17.)

The Seventh Circuit has held that a collector has "maintained procedures reasonably adapted to avoid" errors, *Kort*, 394 F.3d at 537, resulting in violations of the FDCPA when (1) it has a mechanism in place by which it avoids FDCPA violations before they take place and (2) it ceases all collection activities upon discovering that the debt is not collectable. *See Ross*, 480 F.3d at 497; *Hyman v. Tate*, 362 F.3d 965, 968-69 (7th Cir. 2004).

---

[8] In fact, Whitaker even refers to Hudson's misstatement of the debt as "an unintentional misrepresentation." (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 7-8.)

10

In *Hyman*, the collector had an implicit agreement with its providing creditor that the creditor would not refer debtors who were engaged in, or had gone through, bankruptcy proceedings.  362 F.3d at 966.  In *Ross*, the creditor and the debt collector also had an agreement that the collector would forego from any attempts to collect any debts that had been "discharged in bankruptcy."  480 F.3d at 496.  In both of these cases, the Seventh Circuit found the procedures to be sufficient to avoid the initiation of the collections process against a party whose debt could not be legally collected.

In the case at bar, Hudson relied on the account information that was given to it by Bank One after it purchased the credit card accounts.  While both *Hyman* and *Ross* focused on collecting debts in a bankruptcy context, these cases still serve, for the most part,[9] as appropriate guides, as the aim of the FDCPA in bankruptcy cases is the same as in this type of case: to protect consumers from harmful collection practices in all contexts[10].

In light of these goals, Hudson's procedures were particularly reasonable in this regard, as the failure to properly state the amount due was the result of reliance on bad information from Bank One, which had previously corrected itself and given Whitaker

---

[9]  *Ross* and *Hyman* did not deal with methods on interest calculation.  For analysis of this issue in the present case, *see* pp.12-13, *infra*.

[10]  Among the stated purposes of Congress in enacting 15 U.S.C. § 1692 *et seq.* is "to eliminate abusive debt collection practices by debt collectors," § 1692(e), as "[t]here is abundant evidence of the use of [these practices] by many debt collectors," contributing to bankruptcies, marital instability, the loss of jobs, and invasions of privacy.  § 1692(a).  Furthermore, Congress did not distinguish between bankruptcy cases and other types of debt-collection cases in its stated purpose for enacting the FDCPA.

the proper information.  Hudson, on the other hand, received faulty information from the creditor, even with the agreement in place.[11]  Hudson's acts are well within the confines of the bona fide error defense in this respect, particularly as the Seventh Circuit has stated that "the FDCPA does not require collectors to independently verify the validity of the debt to qualify for the 'bona fide error' defense," and that "it would not be reasonable to require [the collector] to independently confirm" account information.  *Hyman*, 362 F.3d at 968; *accord Jenkins*, 124 F.3d at 834-35.

The analysis does not end here, however.  The bona fide error defense requires that a defendant have in place reasonable procedures that enable it to refrain from violating the FDCPA.  While Hudson has clearly shown that it has in place procedures to forego from attempting to collect invalid debts, it has not produced enough evidence to demonstrate by a preponderance that its methods for calculating the initial amount due are reasonable.  *Cf. Wilhelm v. Credico*, 426 F. Supp. 2d 1030 (D.N.D. 2006) (finding that creditor fulfilled requirements of the bona fide error defense upon producing evidence that its use of the wrong method of interest calculation was a bona fide clerical error); *but cf. Miller v. Javitch, Block & Rathbone, LLP*, 397 F. Supp. 2d 991, 1003 (N.D. Ind. 2005) (holding that a plaintiff's claim that the defendant used the wrong interest rate could not withstand a summary judgment motion when defendant had produced

---

[11]  Hudson presents evidence that "less than five percent (5%) of the accounts it [  ] purchased from Chase, [sic] had an improper dollar amount."  (Shropshire Aff. ¶ 19.)  This is a percentage Hudson could have reasonably relied on, considering its other procedures for ceasing from collecting non-recoverable debts.  *See Ross*, 480 F.3d at 497 (stating that one facet of establishing reasonable procedures is having an agreement with the creditor so that the creditor does not provide the collector with legally uncollectible debts).

evidence to the contrary, and plaintiff still rested upon speculation).  While Hudson is correct in pointing out that Whitaker does not produce any evidence showing that Hudson's interest calculation methods are incorrect, it is equally true that Hudson does not produce enough evidence to show that its procedures are reasonably adapted to correctly calculate the interest that has accrued on an account.[12]  Hudson has not met its burden in establishing the bona fide error affirmative defense so that judgment can be rendered in its favor.  *See Adair v. Sherman*, 230 F.3d 890, 894 (7th Cir. 2000) ("[T]he defendant has the burden to set forth facts sufficient to satisfy each element of [an affirmative] defense.") (citing *Havoco of Am., Ltd. v. Freeman, Atkins & Coleman Ltd.*, 58 F.3d 303, 306 (7th Cir. 1995)).

Under the reasonable procedures test, in addition to maintaining proper procedures, the collector must also have policies in place by which it will immediately cease collection efforts after it discovers the debt to be legally uncollectible.  Hudson has established, without dispute from Whitaker, that it is Hudson's practice to promptly desist in any collection efforts after an account has been disputed.  Hudson only sent Whitaker a single dunning letter, and Whitaker makes no claims that he made an attempt to dispute the charge with Hudson; his only response has been to state that he

---

[12] Hudson's only evidence on this point is one sentence in an affidavit: "The account balance listed on Defendant's June 10, 2005 letter ([Def.'s] Exhibit "4"), is comprised of the account balance of $3,536.89, plus interest from the charge-off date of December 8, 2003." (Shropshire Aff. ¶ 13.)  Hudson fails to state the rate at which the interest was calculated, as well as its method and procedures for calculating that interest.  Moreover, the court has been unable to duplicate the Defendant's interest calculation methodology which leads to the sum contained in the Hudson letter.  Further, any method of interest calculation must have been agreed to by the Plaintiff, and also must be reasonably likely to lead to a correct interest calculation.

was "very confused" upon receiving the letter[13].  Neither party disputes that Whitaker did

not initiate any sort of contact with Hudson until September 26, 2005, more than three

months after the dunning letter was sent.  Confused debtor or not, Hudson cannot be

expected to halt debt-collection efforts without some sort of notification of a dispute,

particularly as the presumed purpose behind the notification requirements of § 1692g is

to allow confused and perplexed debtors to work under fair collection procedures, ones

which allow them to dispute any charges, including "the validity of the debt, or any

portion thereof."  15 U.S.C. § 1692g(a)(3)[14].  Even according to Whitaker himself, §

1692g(a) supposedly "provides consumer debtors the opportunity to make an informed

decision regarding the validity of the alleged debt, and it also allows the consumer the

opportunity to make decisions regarding possible action to take."  (Pl.'s Resp. in Opp'n

to Def.'s Mot. for Summ. J. 6-7.)  Again, given that Whitaker "knew" the amount of debt

stated was wrong, he had plenty of opportunity to dispute the debt amount, which would

have given Hudson an opportunity to prove that it would have followed its stated

procedures and ceased collection efforts.  However, since this did not occur, the court

---

[13]  Whitaker makes no claim that he did not know how to dispute the charge.  Such a claim would have been fruitless, of course, as he had already disputed a dunning letter sent by one of the previous debt collectors, American Coradius.  Further, the Seventh Circuit has stated that even unsophisticated consumers are assumed to "possess[ ] 'reasonable intelligence,' and [are] capable of making basic logical deductions an inferences." *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000) (citing, among others, *Chaudhry v. Gallerizzo*, 174 F.3d 394, 408-09 (4th Cir. 1999)).  Even an unsophisticated consumer is likely to be able to deduce or infer that, not having paid any portion of the balance due in several months, interest is likely to have accrued on the account–especially a consumer who has already been notified of the existence and type of interest rate on his or her account.  *See* p.2, *supra*.  As to the amount of increase, Whitaker certainly had time to inquire about and dispute that dollar figure, as he purportedly "knew" that the amount was incorrect.  (*See* Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 6; Whitaker Aff. ¶ 13.)

[14]  For discussion of the purposes of the FDCPA, *see* n.10, *supra*.

must rely on Hudson's undisputed claim that it would have ceased any collection efforts had Whitaker sent a letter of dispute.

So, Hudson has produced unrebutted evidence that it had an arrangement with Bank One to obtain only valid debt amounts, and that it is its custom to halt such collection efforts if and when a debt is properly disputed; however, Hudson has not shown beyond dispute that *all* of its procedures are reasonably adapted to avoid violating the FDCPA.  Outside of issues dealing solely with reasonably-adapted procedures, it is important to note that Hudson only contacted Whitaker once about the nature of the debt.  This contact letter contained all of the necessary information under 15 U.S.C. § 1692g, and even though the amount of debt was misstated, Hudson has shown by unrebutted evidence that its conduct was the result of a good-faith error, as it did not intend to violate § 1692e, but it has not shown that it had appropriate procedures in place with respect to its procedures for assuring that interest calculations were correct.  Therefore, Hudson has fallen short of fulfilling the requirements of § 1692k(c), and is not entitled to judgment in its favor on the bona fide error defense.  Disputed questions for the trier of fact remain on that subject.

## III.    Conclusion

For the foregoing reasons, the Defendant's Motion for Summary Judgment (Doc. No. 35) is **DENIED** and the Plaintiff's Cross-Motion for Summary Judgment (Doc. No. 45) is **GRANTED IN PART** and **DENIED IN PART**.  That is, at trial, the jury will be instructed that the debt amount was misstated, and it will be the Defendant's burden to

prove that the bona fide error defense applies.  If not, the jury will then determine what

damages, if any, to award the Plaintiff.

ALL OF WHICH IS ENTERED this 6th day of August 2007.

John Daniel Tinder, Judge
United States District Court

Copies to:

Magistrate Judge William T. Lawrence

Jeffrey Kevin Eicher
jeffeicher@aol.com

Peter A. Velde
KIGHTLINGER & GRAY
pvelde@k-glaw.com

16